UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ALEX EDDIE SAAVEDRA,   No. 20-10742-t13

    Debtor.

UNITED STATES OF AMERICA,

    Plaintiff,

v.   Adv. No. 20-1062-t

ALEJANDRO SAAVEDRA,

    Defendant.

## **OPINION**

Defendant Alejandro Saavedra was sued by Plaintiff United States of America for alleged violations of the False Claims Act, 31 U.S.C. § 3729. The result was a $192,872.29 judgment against him. Plaintiff now seeks a ruling that the judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(a) as resulting from fraud. Before the Court is Plaintiff's motion for summary judgment, based on issue preclusion principles. Having reviewed the parties' submissions, the record, and the relevant law, the Court concludes that the motion should be granted in part.

A.    Facts.[1]

The Court finds that there is no genuine dispute about the following facts:

---

[1] The Court takes judicial notice of its docket and of the docket of the False Claims Litigation (defined below). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

Defendant is a former director of the Upper Manhattan and Bronx Workforce1 Career Centers, in New York City (the "Career Centers"). The Career Centers were designed to help find jobs for unemployed and underemployed people. They were operated by the Structured Economic Employment Development Company (SEEDCO)[2] pursuant to contracts with the New York City Small Business Services Administration (the SBSA), which distributed federal stimulus funds from the United Stated Department of Labor[3] as part of a national workforce development grant program. Under SEEDCO's contract with the SBSA, the more job placements SEEDCO reported to the SBSA, the more federal grant money it received. SEEDCO used the federal funds it received from the SBSA to operate the Career Centers, including paying directors' salaries and benefits.

From at least 2009-2011, SEEDCO collected millions of dollars in federal funds based on falsified job placement reports. SEEDCO's scheme was revealed in 2011 when a whistle blower filed a qui tam action against it the United States District Court for the Southern District of New York, alleging violations of the False Claims Act. The United States intervened in the qui tam action, joining as additional defendants seven directors of SEEDCO's various career centers, including Defendant, on the theory that the directors "were the primary architects and engineers of the false job placement scheme." After intervention, the action was styled *United States v. Saavedra*, 11 Civ. 6425 (the "False Claims Litigation").

Plaintiff's claims against Defendant for violations of the False Claims Act were premised on allegations that he instructed his subordinates to report false job placements, often by claiming

---

[2] SEEDCO is a corporation that receives funding from government and private sources to promote community economic development, including providing employment training and placement assistance, community lending, and small business services.

[3] Through the Workforce Investment Act of 1998, 29 U.S.C. § 2801 et seq, and the American Recovery and Reinvestment Act of 2009, Pub. L. 111-5, 123 Stat. 115. This legislation was part of a stimulus program implemented to encourage and fund nationwide workforce development.

credit for jobs the candidates had before going to the Career Centers. Plaintiff alleged that Defendant told his staff to visit businesses they had relationships with and gather information about employees so the career centers could say they had placed those employees in their jobs. Finally, Plaintiff alleged that Defendant told his staff to enlist family and friends to complete SEEDCO intake forms so that jobs they already held could be counted as SEEDCO placements. As alleged by Plaintiff, the false and inflated placement numbers were entered into a city database and ultimately transmitted to the federal government, allowing SEEDCO to collect federal grant money it was not entitled to. Defendant was alleged to have a personal interest in this fraudulent scheme because it helped him advance his career with SEEDCO.

SEEDCO was dismissed from the action pursuant to a Consent Decree and Order of Settlement, in which it admitted that its Career Centers submitted false job placement reports. Likewise, all the directors except Defendant settled the claims against them and were dismissed from the action. Thus, the action was tried only against Defendant.

After five days of evidence and arguments, the trial judge orally instructed the jury on the elements of the False Claims Act claims, in relevant part, as follows:

> The United States, the plaintiff, has made two categories of allegations against Alex Saavedra, the defendant. The first allegation is that Mr. Saavedra knowingly presented or caused to be presented false and fraudulent claims for payment to the United States or some party connected to the United States.
> . . . .
> The second category of allegation is that Mr. Saavedra knowingly caused false records or statements to be made or used which were material to a false statement or fraudulent claim made to the United States or a party connected to the United States—knowingly caused false records or statements to be made or used material to a false statement or fraudulent claim.
> . . . .
> We are dealing with the False Claims Act. That is a statute of the United States. It is found in title 31, Section 3729, of the laws of the United States.
> It provides in relevant part that 'any person who. . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . . is liable to the United States Government.'

> . . . .
> . . . There are three definitions provided by statute for 'knowingly:'
> Actual knowledge of the information; acting in deliberate ignorance of the truth or falsity of the information; acting in reckless disregard of the truth or falsity of the information.
> *You do not have to find that there was any specific intent to defraud*.
> . . . .
> The same law in another subsection provides that any person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim is liable to the United States.
>
> . . . .
> A claim is false or fraudulent if it is based on or contains an assertion or statement that is materially untrue.
> . . . .
> Fraud requires a knowing assertion of fact that is true when it is not true or it's made regardless of whether you know it's true or false or with reckless indifference to whether it's true or false.

(emphasis added).

The jury found that Defendant violated the False Claims Act and knowingly caused thirteen material false records or statements to be made or used. Each violation carried a penalty ranging from $5,500 to $11,000, plus up to three times the amount of actual damages sustained by the government. The jury found that Defendant's conduct caused the government $13,000 in damages. Because Defendant did not accept responsibility for his conduct, even after the jury's verdict was returned, the trial court trebled the actual damages (to $39,000), awarded $143,000 in civil penalties (the maximum), and awarded $10,872.29 in costs. A judgment in the total amount of $192,872.29 was entered on June 18, 2015 (the "Judgment").

Defendant filed this chapter 13 case on April 2, 2020. In his schedules, he listed the Judgment amount as an unsecured claim. Plaintiff timely filed this nondischargeability proceeding.

As grounds for summary judgment, Plaintiff argues that because the Judgment is based on an adjudication of fraud under the False Claims Act, collateral estoppel principles establish nondischargeability under § 523(a)(2)(A).[4]

B.  Summary Judgment Standards.

Plaintiff's motion is brought under Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056. Under rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). "[T]he substantive law [governing the dispute] will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (citing *Anderson*, 477 U.S. at 248).

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion and identifying [the portions of the record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.

"If the court does not grant all the relief requested by [a motion for summary judgment], it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case." Rule 56(g). Whether to grant a request to deem facts as established under Rule 56(g) falls within the court's sound

---

[4] Unless otherwise specified, statutory references are to 11 U.S.C.

discretion. *See In re Lane*, 2021 WL 3438347, at *11 (Bankr. D.N.M.), citing 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2737 (4th ed.).

C.     Section 523(a)(2)(A).

Plaintiff seeks a ruling that the Judgment is nondischargeable pursuant to § 523(a)(2)(A), which excepts from discharge "any debt. . . for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud[.]" "To sustain a claim…under Section 523(a)(2)(A), the claimant must prove by a preponderance of the evidence that:

1. The debtor made a false representation;
2. with the intent to deceive the creditor;
3. the creditor relied on the false representation;
4. the creditor's reliance was justifiable; and
5. the creditor was damaged as a result.

*In re Sturgeon*, 496 B.R. 215, 222 (10th Cir. BAP 2013), quoting *In re Young*, 91 F.3d 1367, 1373 (10th Cir. 1996).

D.     Issue Preclusion.[5]

The preclusive effect of a prior federal district court judgment is determined by federal law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *In re Abeyta*, 387 B.R. 846, 852 (Bankr. D.N.M. 2008) ("In determining the preclusive effect of a prior judgment rendered by a federal court, the Court must apply federal principles of collateral estoppel.").

---

[5] The Judgment is entitled to claim preclusion as to its validity and amount. Claim preclusion is not appropriate, however, on the issue of nondischargeability, which is within the exclusive jurisdiction of this Court. *See Brown v. Felson*, 442 U.S. 127, 138-39 (1979) (determining whether a debt is nondischargeable is within the bankruptcy court's exclusive jurisdiction); *In re Deitz*, 760 F.3d 1038, 1043 (9th Cir. 2014) ("the bankruptcy court, via the reference from the district court, has the exclusive authority to determine the dischargeability of debts under § 523(a)(2)"); *In re Crespin*, 551 B.R. 886, 900 (Bankr. D.N.M. 2016) (same).

In *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) the Second Circuit[6] synthesized Supreme Court jurisprudence to identify four requirements of issue preclusion under federal common law:

1. The identical issue was raised in a previous proceeding;
2. the issue was actually litigated and decided in the previous proceeding;
3. the part[ies] had a full and fair opportunity to litigate the issue; and
4. the resolution of the issue was necessary to support a valid and final judgment on the merits.

An issue is "actually litigated" when it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined[.]" Restatement (Second) of Judgments § 27 cmt. d. (1982). An issue is necessary to the judgment when the judgment depends upon its determination. *Id.* at cmt. h.

E.   The Preclusive Effect of the Judgment.

As noted above, there are five elements of § 523(a)(2)(a) claim. The Court concludes that the Judgment precludes relitigating three of the five elements: false representation, reliance, and damages. Litigation of the remaining elements, i.e., justifiable reliance and intent to deceive, are not precluded by the Judgment. The Court's analysis is set forth below.

1.   False Representation. "False representations are representations knowingly and fraudulently made that give rise to the debt." *In re Osborne*, 520 B.R. 861, 868 (Bankr. D.N.M. 2014). "[A] debt may be excepted from discharge when the debtor personally commits actual,

---

[6] Although the elements of issue preclusion are substantially similar among federal circuit courts, to the extent there are differences, the standards that apply in the circuit that issued the judgment should be used. *See, e.g.*, *Corrado v Life Inv. Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (looking to the preclusion law of the federal circuit that issued the judgment); *Semler v. Psychiatric Inst. Of Washington, D.C., Inc.* 575 F.2d 922, 930 (D.C. Cir. 1978) ("it is fundamental that the res judicata effect of the first forum's judgment is governed by first forum's law, not by the law of the second forum"); *Austin v. Super Valu Stores, Inc.*, 31 F.3d 615, 618 (8th Cir. 1994) (same); Restatement Second, Conflicts of Laws § 95, cmt. e (1971).

positive fraud, and also when such actual fraud is imputed to the debtor under agency principles." *In re Villa*, 261 F.3d 1148, 1151 (11th Cir. 2001). The "key element is moral turpitude or intentional wrong." 4 Collier on Bankruptcy, ¶ 523.08[2].

Whether Defendant made false representations to Plaintiff was squarely at issue in the False Claims Litigation. Plaintiff claimed that Defendant (1) knowingly presented or caused SEEDCO or employees to present false or fraudulent requests for payment to the SBSA; and (2) made, used, or caused to be made or used, false records or statements. This issue was "actually litigated and decided" by a jury at a trial in which Plaintiff and Defendant were both parties. It was essential to the judgment.

2. <u>Intent to Deceive</u>. Whether Defendant acted with intent to deceive Plaintiff was expressly *not* determined in the False Claims Litigation. The jury was instructed that it did not have to find that Defendant had a "specific intent to defraud" Plaintiff. While there are legitimate arguments to be made about whether the evidence supported an inference that Defendant acted with such intent, the issue was not determined, nor was it essential to the Judgment.

3. <u>Reliance on the False Representations</u>. Plaintiff's reliance on Defendant's false representations was squarely at issue in the False Claims Litigation. Regarding reliance, the jury was instructed:

> if you find that Mr. Saavedra caused false statements or records to be made or used which were material[7] to a false or fraudulent claim, and made it false or fraudulent, you then go on to determine how much, if anything, the government paid out by reason of the false claims, statements or records in excess of what it would have paid if those claims and records had been truthful—the difference between what the United States would pay if the claims were truthful, if the government has proved that they are false, and the amount it paid because they were false is the quantum of damage.

---

[7] The court instructed the jury that "material" means "having a natural tendency to influence or be capable of influencing, the payment or receipt of money or property."

The jury found that Plaintiff paid $13,000 to SEEDCO that it would not have paid but for the false and fraudulent claims and records submitted at Defendant's behest. The issue was thus actually litigated and decided at the trial. It was also essential to the Judgment, which includes this amount, trebled to $39,000.

    4.    <u>Whether the Reliance was Justifiable</u>. Beyond actual reliance, a § 523(a)(2)(A) claimant must also prove that its reliance on the fraudulent misrepresentation was "justifiable." *See Field v. Mans*, 516 U.S. 59 (1995):

> No one, of course, doubts that some degree of reliance is required to satisfy the element of causation inherent in the phrase "obtained by" . . . . "Following our established practice of finding Congress's meaning in the generally shared common law when common-law terms are used without further specification, we hold that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance.

*Id.* at 66-67, 74. Justifiable reliance is a subjective inquiry, taken from the perspective of the claimant. *Id.* at 71. It is a lower standard than "reasonable" reliance, requiring the recipient of the misrepresentation to investigate the circumstances underlying the representation "only where . . . the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived[.]" *Id.*

The issue of justifiable reliance was not raised in the False Claims Litigation. The jury was not instructed on any degree of reliance beyond the issue of materiality which, in the context of the False Claims Act, is limited to the issue whether the false representation affected the government's decision to pay a claim. *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 492 (3d Cr. 2017) ("The materiality inquiry . . . ask[s] whether the government's payment decision is affected[.]"). In fact, it appears that the jury was steered away from considering the issue whether Plaintiff should have known that the job placement numbers submitted to Defendant were false, based on the following instruction given by the court:

> There was testimony in the case that the [SBSA] contracted with Charney Research to verify the job placement date submitted by SEEDCO. The fact that a third-party verification service was utilized does not by the mere fact of its usage change the issues that you have to decide regarding Mr. Saavedra's liability. The question is if he knowingly presented or caused to be presented one or more false claims for payment to the [SBSA] with funds that ultimately came from the United States.

Justifiable reliance, which was not raised, was not actually litigated or decided, nor was it essential to the Judgment.

     5.    <u>Damages</u>. On the issue of damages, the elements of issue preclusion are clearly satisfied. The jury in the False Claims Litigation was instructed by the Court that

> the United States seeks compensatory damages for the amount of damages its sustained because of Mr. Saavedra's . . . violation of the law. If you find that Mr. Saavedra knowingly presented or caused SEEDCO or its employees to present a false or fraudulent claim for payment, or if you find that Mr. Saavedra caused false statements or records to be made or used which were material to a false or fraudulent claim . . . then go on to determine how much, if anything the government paid by reason of the false claims . . . .

Both parties had a full and fair opportunity to litigate this issue. The issue was actually litigated and decided by a jury. Resolution of the issue of damages was essential to the Judgment.

F.    <u>Partial Summary Judgment</u>.

     It was established in the False Claims Litigation that the Judgment arose from Defendant's false representation on which Plaintiff relied, causing it to sustain damages. These facts, which are material to Plaintiff's § 523(a)(2)(A) claim, shall be treated as established in this case pursuant to Fed. R. Civ. P. 56(g). At trial, Plaintiff need only prove that Defendant intended to defraud Plaintiff and that Plaintiff justifiably relied on Defendant's false representations. If Plaintiff establishes these two remaining elements of its § 523(a)(2)(A) claim, the entire $192,872.29 Judgment would be nondischargeable. *See Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998) ("§ 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud.").

## Conclusion

Plaintiff is entitled to some of the relief it seeks. Plaintiff has established that the Judgment was based on Defendant's false representations to Plaintiff, that Plaintiff relied on the false representations, and that it suffered damages in the amount of the Judgment. Based on the principle of issue preclusion, Defendant is estopped from relitigating those issues in this Court. The only remaining issues of fact are whether Defendant acted with the intent to deceive Plaintiff and whether Plaintiff's reliance on Defendant's misrepresentations was justifiable.

A separate order will be entered, consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 30, 2021
Copies to: counsel of record