UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ALEX EDDIE SAAVEDRA,                                                                                   No. 20-10742-t13

    Debtor.

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                    Adv. No. 20-1062-t

ALEJANDRO SAAVEDRA,

    Defendant.

## **OPINION**

In 2015 Plaintiff obtained a $192,000 judgment against Defendant for violating the federal False Claims Act, 31 U.S.C. § 3729 ("FCA"). Defendant's belated response was this chapter 13 case, filed in 2020. Plaintiff then brought this proceeding, seeking a ruling that the judgment debt is nondischargeable under § 523(a)(2)(A).[1]

Plaintiff previously filed a motion for summary judgment. The Court granted the motion with respect to three of the five elements of a § 523(a)(2)(A) claim but denied it for the other two (intent to deceive and justifiable reliance).

Before the Court is Plaintiff's motion to reconsider. Upon reconsideration, the Court finds that there is a genuine fact issue about Defendant's intent to deceive but not about Plaintiff's justifiable reliance.

---

[1] Unless otherwise indicated, all statutory references are to 11 U.S.C.

A. Facts.[2]

The following facts are relevant to Plaintiff's motion to reconsider:

Defendant is a former director of the Upper Manhattan and Bronx Workforce1 Career Centers in New York City (the "Career Centers"). The Career Centers were designed to help find jobs for unemployed and underemployed people. The Career Centers are funded by federal money provided through the Workforce Investment Act of 1998 and the American Recovery and Reinvestment Act of 2009. The Career Centers were operated by the Structured Economic Employment Development Company ("SEEDCO"), a nonprofit corporation, pursuant to contracts with the New York City Small Business Services Administration ("SBS"). The funds SBS paid SEEDCO were reimbursed by the United States Department of labor.

Under SEEDCO's contract with SBS, the more job placements SEEDCO reported to SBS, the more federal money it received. SEEDCO used the money to operate the Career Centers, including paying the directors' salaries and benefits.

From at least 2009-2011, SEEDCO collected millions of dollars based on falsified job placement reports. SEEDCO's scheme was revealed in 2011 when a whistle blower filed a *qui tam* action against it in the United States District Court for the Southern District of New York (the "FCA Action"). The United States intervened and filed an amended complaint, joining as additional defendants seven directors of SEEDCO's Career Centers, including Defendant, on the theory that the directors "were the primary architects and engineers of the false job placement

---

[2] The Court takes judicial notice of its docket and of the docket of the United States District Court for the Southern District of New York, in *United States v. Saavedra*, 11 Civ. 6425 (the "SDNY Case"). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

scheme." The amended complaint included two FCA violation counts and counts for common law fraud, unjust enrichment, and payment under mistake.

SEEDCO was dismissed from the action pursuant to a Consent Decree and Order of Settlement, in which SEEDCO admitted that the Career Centers submitted false job placement reports. In addition, all the directors except Defendant settled the claims against them and were dismissed. The FCA Action went to trial only against Defendant.

On the morning of trial Plaintiff withdrew the counts for common law fraud, unjust enrichment, and payment by mistake, leaving only the FCA counts.

Plaintiff's FCA claims were premised on the allegation that Defendant knowingly caused false job placement reports to be submitted to the SBS, which used those records to make claims for federal funds, in violation of the FCA.

At trial, Defendant testified that he had no knowledge of any false job placement reports. He admitted that he pushed SEEDCO employees to increase their placement numbers, but denied that he encouraged, instructed, or knew about any falsification of job placement reports.

After a five-day trial, the district court judge instructed the jury as follows:

> The United States, the plaintiff, has made two categories of allegations against Alex Saavedra, the defendant. The first allegation is that Mr. Saavedra knowingly presented or cause to be presented false and fraudulent claims for payment to the United States or some party connected to the United States.
> . . . .
> The second category of allegation is that Mr. Saavedra knowingly caused false records or statements to be made or used which were material to a false statement or fraudulent claim made to the United States or a party connected to the United States—knowingly caused false records or statements to be made or used material to a false statement or fraudulent claim.
> . . . .
> We are dealing with the False Claims Act. That is a statute of the United States. . . . It provides in relevant part that 'any person who. . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . . is liable to the United States Government.'
> . . . .

> . . . There are three definitions provided by statute for 'knowingly:'
> Actual knowledge of the information; acting in deliberate ignorance of the truth or falsity of the information; acting in reckless disregard of the truth or falsity of the information.
> You do not have to find that there was any specific intent to defraud.
> . . . .
> The same law in another subsection provides that any person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim is liable to the United States.
> . . . .
> A claim is false or fraudulent if it is based on or contains an assertion or statement that is materially untrue.
> . . . .

After deliberating for two days, the jury returned a verdict that Defendant violated the FCA by knowingly causing thirteen materially false job report records to be made or used. The jury did not indicate which version of the term "knowingly" they found applicable. The jury found that Defendant's conduct caused the government $13,000 in damages.

The presiding judge took exception to Defendant's refusal to "accept responsibility for his actions, issuing a press release stating that he was 'gratified by the verdict' and stating the verdict 'is a very significant vindication.'" The judge entered a judgment against Defendant for $192,872.29, which included penalties, treble damages, and costs (the "Judgment"). Defendant appealed the Judgment to the Second Circuit Court of Appeals, which affirmed.

Defendant filed this chapter 13 bankruptcy case on April 2, 2020. Plaintiff brought the nondischargeability proceeding on October 30, 2020, and moved for summary judgment on June 11, 2021. Based on issue preclusion principles, the Court granted the motion with respect to the

§ 523(a)(2)(A) elements of false representation, reliance, and damages, but denied the motion on the issues of intent to deceive and justifiable reliance.[3]

In the motion to reconsider, Plaintiff argues that, apart from issue preclusion, the trial evidence from the FCA Action entitles it to summary judgment on the intent to deceive and justifiable reliance elements. Large portions of the trial record, totaling about 1,200 pages, are part of the record in this proceeding. Plaintiff cited to a number of pages of the record in support of its argument.

Defendant did not submit affidavits or other materials in opposition to the summary judgment or reconsideration motions, nor did he cite to the FCA Action trial record. Instead, Defendant argued:

> The documents Plaintiff does present do not comply with the evidentiary requirements of Rule 56. Plaintiff presents no affidavit or other sworn statement authenticating the exhibits it has provided. . . . The documents are not identified in a supporting affidavit, are not sworn or certified copies, and absolutely no foundation has been laid for their admission. . . . The documents are subject to a hearsay objection, are not relevant to the issues in dispute, and should be stricken from the Motion. . . . Plaintiff could have, but did not, provide certified copies of the documents it presents as another way around the hearsay problems presented by the exhibits.

B.  <u>The Partial Summary Judgment Order is Interlocutory</u>.

The Court's order granting partial summary judgment is interlocutory. *See Ralston v. Cannon*, 2021 WL 3478634, at *3 (10th Cir. 2021) (district court's denial of a motion for summary judgment was interlocutory); *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1103 (10th Cir. 1998) (a "[d]enial of summary judgment 'is strictly a pretrial order that decides only one thing—

---

[3] Section 523(a)(2)(A) excepts debts for false representations, false pretenses, or actual fraud. A false representation claim has five elements: 1) debtor made a false representation; 2) with the intent to deceive creditor; 3) creditor relied on the false representation; 4) creditor's reliance was justifiable; and 5) creditor was damaged as a result. *In re Sturgeon*, 496 B.R. 215, 222 (10th Cir. BAP 2013).

that the case should go to trial.'" (quoting *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed. Cir. 1986)); *Conrad v. Phone Directories Co., Inc.*, 585 F.3d 1376, 1380 (10th Cir. 2009) ("By its very nature, the decision to deny a motion to dismiss is not final").

C.  Standard for Reviewing Motions to Reconsider Interlocutory Orders.

Fed. R. Civ. P. ("Rule") 54(b) provides that an order adjudicating fewer than all claims of all parties "may be revised at any time before the entry of a judgment…." The rule applies to reconsiderations of interlocutory orders. *See, e.g., Raytheon Constructors, Inc. v. ASARCO, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003) (Rule 54, not Rule 60, provides the basis for reconsidering an interlocutory order); *C & A Const. Co. v. DHC Dev.*, 501 Fed. App'x 763, 779 (10th Cir. 2012) (same); *Trujillo v. Board of Educ. of Albuquerque Public Schools*, 212 Fed. Appx. 760, 765 (10th Cir. 2007) (unpublished) (same).

Some courts apply a strict standard for reviewing motions to reconsider interlocutory orders, using an analysis similar to Fed. Rules Civ. P. ("Rules") 59 or 60.[4] *See, e.g., Shervington v. Village of Piermont*, 732 F. Supp. 2d 423, 425 (S.D.N.Y. 2010) (grounds justifying reconsideration under Rule 54(b) are similar to those under Rule 59); *Lancer Ins. Co. v. Malco Enter. of Nevada, Inc.*, 2012 WL 2886708, at *1 (D. Utah 2012) (court applied a Rule 59(e) analysis to decide a motion to reconsider); *Sump v. Fingerhut, Inc.*, 208 F.R.D. 324, 327 (D. Kan. 2002) (while Rule 59(e) does not apply to interlocutory orders, the standards established under that rule would be used).

---

[4] Rules 59 and 60 govern reconsideration of final orders and judgments. Grounds warranting reconsideration under those rules include, inter alia, an intervening change in controlling law, newly discovered evidence, the need to correct error, and fraud. *Schlecht v. Lockheed Martin, Corp.*, 626 Fed. App'x 775, 780 (10th Cir. 2015) (the Rule 59 standard); *Wright v. Hickman*, 36 Fed. Appx. 395, 400 (10th Cir. 2002) (the Rule 60(b) standard).

Other courts rely on their general discretionary authority to reconsider non-final orders as justice requires. *See, e.g., Friedman v. Dollar Thrifty Automotive Group, Inc.,* 2015 WL 8479746, *2 (D. Colo. 2015) ("In deciding a motion to reconsider an interlocutory order, the court is not bound by the stricter standards for considering a Rule 59(e) or 60(b) motion.… Instead, a court has plenary power to revisit and amend interlocutory orders as justice requires."); *Trujillo v. Board of Education of the Albuquerque Public Schools*, 470 F. Supp. 2d 1270, 1275 (D.N.M. 2005), *aff'd and remanded on other grounds*, 212 Fed. App'x 760 (10th Cir. 2007) (applying the discretionary standard and determining that it was in the interests of justice to grant the motion).

The discretionary standard is consistent with Tenth Circuit precedent. *See, e.g., Raytheon Constructors*, 368 F.3d at 1217 ("The district court was incorrect to treat Raytheon's motion for reconsideration under Rule 60(b), which only applies to final orders or judgments."); *Trujillo v. Board of Educ. of Albuquerque Public Schools*, 212 Fed. App'x 760, at *4 (10th Cir. 2007) ("a motion for reconsideration filed prior to final judgment 'was nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.'").

D.  <u>Plaintiff's Evidence on Intent to Deceive and Justifiable Reliance</u>.

Plaintiff argues that materials it cited from the FCA Action trial supports summary judgment on the intent to deceive and the justifiable reliance elements of § 523(a)(2)(A).

1.  <u>Materials supporting an "intent to deceive" finding</u>. In support of summary judgment on Defendant's alleged intent to deceive, Plaintiff cites:

> testimony from Debtor's personal assistant that Debtor had personally instructed her to create records in which SEEDCO takes credit for false placements. (DA 164-66.) The evidence further included a recording of Debtor directly instructing his employee to lie to SBS, by "fluff[ing]" "the numbers." (PA 94-95.) And it included testimony from SEEDCO employees that Debtor presided over meetings at which the fraudulent scheme was openly discussed, received emails in which the

-7-
Case 20-01062-t    Doc 45    Filed 04/07/22    Entered 04/07/22 11:27:04 Page 7 of 11

fraudulent scheme was discussed, and sent emails pressuring his staff to meeting [sic] placement goals, telling them their jobs were "at stake" and "on the line." (DA 51, 159-66; PA 16-17, 92-93, 96-98.) Indeed, these WIA payments funded Saavedra's salary, thus providing him with compensation he would not have received but for the fraud. (DA 179-80.)

Summary Judgment Motion, p. 19.

  2. <u>Materials supporting a "justifiable reliance" finding</u>. In support of summary judgment that its reliance was justifiable, Plaintiff cites:

reliance on SEEDCO's reporting was "justifiable," . . . as it was consistent with SBS's practice with all vendors who operate Workforce1 centers under the WIA (DA 75-78, 202, 835, 908-12), and because a "cursory examination," *Field*, 51 U.S. at 71, would not have revealed the fraud, (DA 689 (DOI noting that its investigation was limited due to destruction of evidence, and that SEEDCO staff "intentionally manipulated information" in the database relied on by SBS); DA 289 (DOI investigator testifying that "the falsification was done in a way that would have passed the Charney validation methods")).

Summary Judgment Motion, pp. 19-20.

E. <u>Defendant's Objections to Plaintiff's Supporting Material is Overruled</u>.

Defendant's argument that Plaintiff cannot rely on the FCA Action trial materials must be overruled. Pursuant to Rule 56(c)(1)(A), a movant can support a summary judgment motion with "other materials." The Court concludes that the transcript from the FCA Action trial, as well as the exhibits admitted into evidence at that trial, have the indicia of reliability to support a summary judgment motion. Evidence in an inadmissible form can support a summary judgment motion as long as it could be tendered in an admissible form at trial. *See, e.g., McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Defendant made no showing that the material Plaintiff relies on would be inadmissible at trial of this adversary proceeding. In view of the fact that it was admitted in the FCA Action trial, it seems likely that the material could be admissible here

F. <u>The Court Will Consider the Entire Record</u>.

Rule 56(c)(3) provides that, with respect to citations to the record in support of or opposition to a motion for summary judgment, "The court need consider only the cited materials, but it may consider other materials in the record." In its discretion, the Court has elected to review the materials from the FCA Action trial that were made part of the record of this proceeding. *See, e.g., Wei Su v. Sotheby's, Inc.*, 490 F. Supp. 3d 725, 736 (S.D.N.Y. 2020) (under Rule 56(c)(3), the trial court has the discretion to consider uncited material in the record); *Rivero v. Board of Regents of University of New Mexico*, 2019 WL 1085179, at *87 (D.N.M.) (same); *Lopez v. Delta Int'l Mach. Corp.*, 2017 WL 3142028, at *4 (D.N.M.) (same). The materials the Court considered include:

> The amended complaint;
> The pretrial order;
> The parties' proposed requests to charge;
> The parties' opening and closing statements;
> The judge's jury instructions;
> Portions of Defendant's trial testimony;
> Portions of the trial testimony of five other former SEEDCO employees; and
> Some of the trial exhibits.

G.    <u>There is a Fact Issue About Defendant's Intent to Deceive</u>.

The record shows that there is a genuine fact issue about whether Defendant intended to deceive Plaintiff when SEEDCO gave SBS the false job placement reports. There is material in the record from which the Court could find that Defendant intended to deceive Plaintiff and part of the group of SEEDCO employees who created and uploaded the false job placement reports. For example, Kimberly Nesmith, Defendant's former administrative assistant, testified that Defendant told his staff to enter job placement reports for customers who did not get a job when SEEDCO tried to place them but got work later on. Similarly, Ms. Ana Marchany-Bryant, a SEEDCO employee responsible for entering jobs information into SBS's database, testified that

Defendant was present in staff meetings when the practice of gathering false placements was discussed.

On the other hand, there is material in the record from which the Court could find that Defendant lacked any intent to deceive. This material includes:

- Plaintiff dropped the common law fraud claim at the beginning of trial, so the jury never got to decide the question of intent;

- Defendant testified that he was not aware of any false job placement reports and that falsifying the reports had never been discussed at the weekly staff meetings.

- Mr. Alan Katz, who admitted to preparing false job placement reports, testified that he never discussed improper placement practices with Defendant;

- Ms. Shandell Velez, a SEEDCO employee who attended the weekly staff meetings, testified that there were no discussions about false placements at any of the meetings;

- After Plaintiff rested its case and Defendant moved for a judgment, the court asked Plaintiff "There is no evidence, is there, that [sic] what Mr. Saavedra's motive was?"

- The whistleblower, Mr. William Harper, testified that he had no information that Defendant knew about the improper job placements; and

- Defendant knew SBS had hired a company to audit SEEDCO's job placement reports.

The Court finds that there is a genuine issue of material fact whether Defendant intended to deceive Plaintiff.

H.  There is No Fact Issue About Justifiable Reliance.

On the other hand, the Court finds that there is not a genuine issue of material fact about whether Plaintiff's reliance was justifiable. Plaintiff hired an independent agency, Charney Research, to audit SEEDCO's job placement reports. Charney's review was designed to catch false placement reports like the ones SEEDCO filed. As it turned out, Charney's review did not alert Plaintiff to any false claims, but the Court finds that Plaintiff's reliance on the job placement reports was justified in light of the Charney review and other protocols in place. The Court did not see anything in the record that might raise a fact issue on this point.

Conclusion

Plaintiff is entitled to summary judgment that it justifiably relied on the false job placement reports submitted by SEEDCO. On the other hand, Plaintiff is not entitled to summary judgment that Defendant intended to deceive Plaintiff. The Court will enter a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 7, 2022
Copies to: counsel of record